**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

In re:

Tovan Construction, Inc.                                    Case No. 19-12423-KHK

Debtor                                                      (Chapter 7)

**MEMORANDUM ORDER**

This matter was before the Court on July 28, 2020 for a hearing on the Trustee's Motion to Approve

Settlement (Docket No. 42) (the "Motion").  Through this Motion, the Trustee seeks to settle certain claims

between Tovan Construction, Inc. (the "Debtor"), Michael A. Pancione, the Debtor designee and a principal

of the Debtor and Tovan Enterprises, Inc., ("Pancione"), Tovan Enterprises, Inc. ("TEI") and River House

Enterprises LC ("River House").  The Settlement provides for payments by Pancione and TEI to the estate

and River House, mutual releases and a bar order.  The Internal Revenue Service (the "IRS"), a secured and

priority creditor in this case, filed an objection to the Settlement, asserting that it violates the Bankruptcy

Code's priority schemes and improperly attempts to bar the IRS from asserting future claims.  Based on the

record before the court, argument of counsel, and for the reasons that follow, the Court finds that the

proposed settlement violates the Bankruptcy Code's priority schemes and will deny the Trustee's Motion.

**Factual Background**

In August of 2017, River House obtained an arbitration award against the Debtor and had that

award confirmed in state court.  *See* Docket No. 33 (Stay Motion).  The arbitration award and related costs

and fees, which now total $566,429.84, are the basis for River House's unsecured claim in this case.  Claim

Register, No. 4-3.  In an attempt to collect on that award, River House filed suit against the Debtor, Pancione

and TEI in the Loudoun County Circuit Court, alleging that Pancione formed TEI for the purpose of

diverting the Debtor's assets to TEI in order to evade the Debtor's creditors (the "Loudoun Claims").  The

Loudoun Claims were founded upon various theories of conspiracy, alter ego, veil-piercing and fraudulent

transfer liability, but in essence rested upon the theory that the Debtor fraudulently transferred assets away from creditors.

On July 24, 2019, the Debtor filed a petition under chapter 7 of the Bankruptcy Code.  Following the Debtor's bankruptcy filing and imposition of the automatic stay under section 362(a) of the Bankruptcy Code, on April 29, 2020, River House sought relief from the stay to continue prosecuting the Loudoun Claims in state court.  The Trustee opposed stay relief, arguing that the Loudoun Claims were property of the estate and that River House therefore lacked standing to prosecute those claims.  The stay relief motion has essentially been held in abeyance pending resolution of the instant Motion.  *See* Docket No. 39 (order continuing stay relief motion indefinitely in connection with motion to approve settlement).

In addition to the River House Claim and other claims filed in the case, the IRS holds claims totaling $385,872.95, all of which are secured by federal tax liens, notices of which were filed in November of 2016. (Claims Reg. 2-3).  At least $112,242.21 of these claims are priority claims under section 507(a)(8). (Claims Reg. 2-3).  None of these claims have been objected to.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this district on August 15, 1984.  This is a core proceeding as it concerns the administration of the estate and approval of use of property of the estate.  28 U.S.C. § 157(b)(2)(A) and (M).

Settlements under Federal Rule of Bankruptcy Procedure 9019 must be "fair and equitable."  *In re Alpha Nat. Res., Inc.*, et al., 544 B.R. 848, 857 (Bankr. E.D. Va. 2016) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. at 424). The court analyzes four factors in determining whether to approve a settlement under this standard: (i) the probability of success in litigation; (ii) the potential difficulties in any collection; (iii) the complexity of the litigation and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interest of the creditors.  *See In re Frye*, 216 B.R. at 174 (citing *In re Martin*, 91 F.3d 389, 393 (3d. Cir. 1996)); *see also In re Three Rivers Woods, Inc.*, No. 98–38685, 2001 WL 720620 at *5–6 (Bankr. E.D. Va. Mar. 20, 2001). "In essence, a

compromise or settlement will likely gain approval if it is both 'fair and equitable,' as well as representative

of the best interests of the estate as a whole." *In re Three Rivers Woods Inc.*, 2001 WL 720620 at *6

(internal citations omitted). A bankruptcy judge is not required to "conduct a full evidentiary hearing or

mini trial" before approving a settlement. *In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995) (quoting

*In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also DePoister v. Mary M. Holloway Found.*,

36 F.3d 582, 586 (7th Cir. 1994)). Instead, the Court must decide "whether the settlement falls 'below the

lowest point in the range of reasonableness.'" *In re Austin*, 186 B.R. at 400; accord *In re Alpha Nat. Res.*

*Inc.*, 544 B.R. at 857.

In addition to the foregoing factors, as the Supreme Court noted in *Czyzewski v. Jevic Holding*

*Corp.*, "distributions of assets in a Chapter 7 liquidation must follow" the priority schemes in the

Bankruptcy Code. *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 979, 197 L. Ed. 2d 398 (2017). The

*Jevic* Court observed as follows with respect to the chapter 7 priority scheme:

> The Code also sets forth a basic system of priority, which ordinarily determines
> the order in which the bankruptcy court will distribute assets of the estate. Secured creditors
> are highest on the priority list, for they must receive the proceeds of the collateral that
> secures their debts. 11 U.S.C. § 725. Special classes of creditors, such as those who hold
> certain claims for taxes or wages, come next in a listed order. §§ 507, 726(a)(1). Then come
> low-priority creditors, including general unsecured creditors. § 726(a)(2). The Code places
> equity holders at the bottom of the priority list. They receive nothing until all previously
> listed creditors have been paid in full. § 726(a)(6).

*Jevic Holding Corp.*, 137 S. Ct. at 979.

Here, the main dispute is whether the settlement, which provides for (i) payment of $110,000 by

Pancione and TEI to the Estate, (ii) payment of $70,000 by Pancione and TEI to River House, (iii) mutual

releases between the parties, and (iv) a bar order to give effect to the mutual releases, violates the

Bankruptcy Code's priority schemes by paying $70,000 to River House, a general unsecured creditor, ahead

of the IRS' secured and priority claims. The Trustee contends that the Bankruptcy Code's priority scheme

only applies if the Loudoun Claims are property of the estate. The Trustee argues that because the dispute

over who owns the Loudoun Claims is being settled—in other words, because the Trustee and River House

say there is a cloud over title to the Loudoun Claims—that the Bankruptcy Code's priority scheme does not apply to settlement of that dispute.

The Trustee seeks to characterize this as a settlement of the dispute over who owns the Loudoun Claims. The Court declines to adopt the Trustee's description of the settlement and instead will look to the settlement's substance to determine its true nature. At core, the Trustee is settling alleged fraudulent transfers between the Debtor, Pancione and TEI. Because fraudulent transfers harm the entire estate, not individual creditors, these causes of action, particularly in light of the bankruptcy filing, are property of the estate. *See Nation American Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir.1999) (fraudulent conveyance actions are property of the estate which vest in the debtor in possession or trustee such that an individual creditor lacks standing to pursue such a claim).

River House may assert that it holds a separate conspiracy claim against the non-debtor entities, but in reality, River House is using the conspiracy claim to further prosecute fraudulent transfer theories in an attempt to recover on the arbitration award against the Debtor.[1] To the extent that River House had any conspiracy claim separate and apart from estate property (and separate and apart from any fraudulent transfer litigation related to the Debtor), the Trustee has no standing to settle that claim and the court declines to exercise jurisdiction over that claim, to the extent it even could.

In any event, given that the settlement purports to settle estate claims, the distributions provided for by the settlement are proceeds of property of the estate[2] and therefore must adhere to the Code's priority schemes. As a result, it is of no consequence whether the funds "will be paid by Pancione or TEI," particularly in light of the fact that the claims being settled are alleged fraudulent transfers of estate property to Pancione and TEI. *See* Docket No. 49 (Trustee asserting that Pancione and TEI will pay and therefore the funds need not be distributed in accordance with Code priorities). As previously noted, the IRS' claims total $385,872.95 and are secured by federal tax liens. (Claims Register, No. 2-3). Further, at least

---

[1] Indeed, as indicated in the Motion for Relief at Docket No. 33, River House's theory of the case is that TEI was a shell created to keep the Debtor's assets from the Debtor's creditors.

[2] By virtue of the IRS' federal tax liens, the distributions under the settlement are also proceeds of the IRS' collateral.

$112,242.21 of the IRS' claims are entitled to priority under section 507(a)(8) of the Bankruptcy Code.

Although the Trustee questions the secured status of the IRS, the Trustee has not objected to the IRS'

claims.  Because the proposed settlement seeks to pay River House, an unsecured creditor, $70,000 while

the IRS, a senior creditor, does not receive payment in full, the Court finds that the settlement is not "fair

and equitable" because it violates the Bankruptcy Code's priority schemes.  Because the Court is denying

the motion to approve settlement on the grounds that the payments violate the priority scheme in the Code,

the Court need not reach the propriety of the bar order.  Accordingly, it is hereby,

**ORDERED**:

1.      The Trustee's Motion to Approve Settlement (Docket No. 42) is DENIED.

2.      The parties to the Motion for Relief (Docket No. 33) shall notice a status hearing with

respect thereto on the Court's next available relief from stay docket to inform the Court of the parties'

positions in light of this Order.

3.      The Clerk shall provide a copy of this order and notice of its entry to the parties listed

below.


Date:    Mar 31 2021                          /s/ Klinette H Kindred
                                             Klinette H. Kindred
                                             United States Bankruptcy Judge
                                             Entered On Docket: March 31, 2021



Mailed copies to:                            Electronic copies to:

Tovan Construction, Inc.                     Kevin R. McCarthy
3525 Sugar Hill Ln.                          *Counsel for the Chapter 7 Trustee*
Goldvein, VA 22720-1838
*Debtor*                                     Ward W. Benson
                                             *U.S. Department of Justice*

                                             Office of the U.S. Trustee